(46 Misc. Rep. 106)　　　　COHEN v. MILLER et al.

(Supreme Court, Appellate Term. December 23, 1904.)

1. PARTNERSHIP—LOANS—KNOWLEDGE OF PARTNER.

In an action against a firm to foreclose a chattel mortgage securing a loan, evidence *held* insufficient to support a finding that one of the partners had neither authorized the mortgage nor received any portion of the proceeds of the loan.

2. SAME—LIABILITY OF PARTNERS.

Where money was borrowed by a partner on the firm's credit, all of the members were liable therefor, whether the money was applied to the business of the firm, or misapplied.

3. SAME—CHATTEL MORTGAGES—EXECUTION.

A partner has authority, without consulting his copartner, to execute in the firm name a chattel mortgage on the firm's property to secure a firm debt.

4. SAME.

Where a partner had apparent authority to make a loan for the firm's benefit, and stated to the lender that his copartner had sent him to see the lender about the loan, and the latter had no reason to suspect that he was not making the loan to the firm, or that the .partner making it was without authority to borrow the money or give a chattel mortgage on the firm's assets securing the same, the copartner was not discharged from liability because his name was not signed to the mortgage.

Appeal from Municipal Court, Borough of Manhattan, Thirteenth District.

Action by Samuel Cohen against Nathan Miller and another. From a Municipal Court judgment in favor of defendant Miller, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Max Brown, for appellant.

Henry Kuntz, for respondent.

GILDERSLEEVE, J. The pleadings are oral. The complaint is "action on chattel mortgage." The answer is a "general denial." The uncontradicted evidence shows that the two defendants were copartners, and that the plaintiff loaned to the defendant Wilk $200, and took a chattel mortgage on the partnership property executed in the firm name by Wilk alone. This action is to foreclose that mortgage. The defendant Miller alone defended the action. The justice found for the defendant. The plaintiff appeals.

Four witnesses were called for the plaintiff, and only one for the defendant, i. e., Miller himself. The plaintiff swears that he has known Miller for about 5 years, and Wilk for about 12 years; that one day in the middle of November, 1903, he and one Balofsky were playing cards with the two defendants, at defendants' place of business, when Wilk said he wished plaintiff would loan defendants $200, which request was repeated by Miller; plaintiff gave no positive answer; that a few days later Wilk said to plaintiff, "Cohen, will you lend me $200?" to which

¶ 2. See Partnership, vol. 38, Cent. Dig. § 241.

request plaintiff replied he would consider the matter; that still again Wilk asked plaintiff, "Did you make up your mind to give us the money?" that plaintiff asked, "Where is Miller?" and Wilk replied, "Miller sent me over to see you;" that plaintiff then said he would send a man to see if the property was sufficient security; that he did send one Meyer, who reported favorably, and that he gave the $200 to Wilk, who gave him the chattel mortgage in suit. One Balofsky is then called for plaintiff, and swears that he knew both defendants, and corroborated plaintiff as to the game of cards and the request of Wilk, in the presence of Miller, for the loan during the said game of cards, or shortly thereafter, at defendants' place of business in November, 1903. He contradicts himself somewhat as to the details of that interview. The next witness is one Meyer, who swears that he examined the property of defendants, at the request of plaintiff, and had a talk with Wilk, but states that he did not speak to Miller. The plaintiff and these two witnesses appear to have known Wilk a long time. The next witness is Wilk himself, who corroborates the testimony of plaintiff as to the game of cards, and states that he made the request for a loan of $200 after the game was finished, and that Miller said, "It would be a good thing;" that, after the loan had been made and the mortgage given, he gave $100 of the sum so loaned to Miller, and kept the other $100 himself. The plaintiff then rested his case, and Miller was called as a witness on his own behalf. He denied that he received the $100 from Wilk, or that he authorized the mortgage, or that he had any knowledge of the loan or mortgage until the marshal came to defendants' place of business with a warrant of attachment in this action. He also denied that the partnership needed this loan.

The justice appears to have given credit to the testimony of Miller, and rendered judgment in his favor, as we have seen. We think this conclusion is against the evidence and against the weight of evidence, and that for this reason the judgment should be reversed.

But even assuming the denials of Miller to be well founded, we find the facts to be, as shown by uncontradicted testimony, as follows, viz.: Wilk borrowed $200 from plaintiff, and gave a mortgage on the partnership property therefor, keeping the whole sum of $200 for himself, while Miller knew nothing of said loan and mortgage until after the commencement of this action; but plaintiff understood the loan was made to the firm. Whether or not there was any specific limitation in the articles of copartnership upon the powers and authority of Wilk, we do not know, as the said articles were not allowed in evidence. We shall assume, therefore, that there was none, so far as the purposes of this appeal are concerned. All the members of a firm are liable, where money is borrowed by one of the partners on the credit of the firm, whether applied to the business of the firm or misapplied. Onondaga County Bank v. De Puy, 17 Wend. 47; Whitaker v. Brown, 16 Wend. 505. One partner can, without consulting his copartner, execute, in the firm name, a chattel mortgage of the firm's property to secure a firm debt. Neer v. Oakley, 2 N. Y. Supp. 482; Willett v. Stringer, 17 Abb. Prac. 152. The general rule is that one partner may bind the partnership to any transaction, within the apparent scope of the copartnership business, without the knowledge or consent of the

other partner, so that a third party, acting in good faith, may recover against the copartners.

It is apparently the theory of the defense that plaintiff and Wilk had entered into a scheme to defraud Miller. But where is there any proof of bad faith on the part of plaintiff? The uncontradicted evidence, as we have seen, is that one partner borrowed money, ostensibly for the firm, and gave this mortgage executed by one partner in the name of both. This transaction was not without the apparent scope of the partnership business, so as to call upon plaintiff to require the signature of both partners, especially as Wilk, whom he had known a long time, told him that "Miller had sent him over to see" plaintiff about the loan. Plaintiff, as we have pointed out, supposed he was loaning to the firm, and had no reason to suspect that Wilk was without authority to borrow the money or give the mortgage.

It is doubtful if the issue of fraud could be properly raised here, by reason of the answer. Fraud is a defense that should be pleaded, and the answer herein, as we have seen, is a general denial. We think that, under the proofs presented, it must be held that plaintiff's mortgage has been shown to be a valid mortgage.

The judgment is reversed and a new trial granted, with costs to the appellant to abide the event. All concur.